Thank you, Your Honor. My name is Paul Hughes. I represent Plaintiff Appellant Tony Newmy. This case concerns the question whether the favorable termination doctrine of Heck v. Humphrey applies in circumstances where a litigant lacks access to federal habeas through no fault of his own. Seven courts of appeals have concluded that Heck does not apply in these circumstances. The district court expressly recognizing that seven circuits have held that, however, held to the contrary, viewing itself bound by precedent from this circuit, the NC case. We submit that the district court was incorrect with that submission, that both the majority of the courts are correct to conclude that Heck does not apply in these circumstances, and second, that circuit precedent does not foreclose this position. Do you think that NC controls the question? No, Your Honor. I think NC is distinguishable because I think NC can fairly be read to deal with the broader question of whether the mere fact that somebody is no longer incarcerated, whether that excuses the Heck favorable termination requirement, and that's not our position in this case. We take the more narrow argument that Heck is excusable in solely the scope of cases where a litigant never had access to habeas. In the NC case, the state defendants pointed out in their briefing that the litigant in NC, the plaintiff there, could have pursued habeas while he was incarcerated, but he failed to do so. He didn't diligently pursue his rights, and NC did not even respond to that argument in his reply brief. So I think it's a fair reading of the case, Your Honor. Where does the opinion say that that was the basis for the decision? Your Honor, I think the place that I would point is where NC, in describing the argument that NC proffered was that NC argues, and I'm quoting from the opinion, because the writ of habeas corpus is no longer available to him on a claim challenging the length of his imprisonment, Heck does not bar his suit. No longer. No longer because he'd been released. Yes, Your Honor. And our submission is that NC deals with the broader question of just is release enough to escape Heck? And we do not challenge that position, that release is enough. Somebody who had been incarcerated for ten years, who had the opportunity to pursue a habeas claim, failed to do so, is released. That person would certainly be covered under NC. But our submission is the more narrow one, that somebody who never had access as a practical matter to federal habeas is not outside a 1983 claim. Is it because of the length of time, the short length of time, the person was incarcerated for the kind of institution? Your Honor, I think it's mostly the short length of time of the person's incarceration. It's just a practical test as to whether or not somebody had, in fact, access to the habeas remedy. How would that test work? How much time is required before the Heck bar applies? Yes, Your Honor. I'm not certain there's a clear, bright-line rule, but I think the question would be for a district court to determine did this person, was it reasonable for this person to pursue a habeas claim? For somebody who's incarcerated a day, a month, two months, I think in those circumstances, as the courts have recognized, it's fairly clear that that kind of person does not have access to habeas. Somebody who's incarcerated, like the NC individual, for three years and never brings a claim, I think somebody in that circumstance, one could conclude, has relinquished their rights, and at that point they would be foreclosed under the NC doctrine. Well, did NC have three years? Because this was something that happened while he was incarcerated, as I recall. Your Honor, my understanding is that the State's representation in their brief to the court was that he had been incarcerated, I believe it was over two years, it might have been two and a half, and I thought it was as long as three years. And one of the arguments that the State expressly made was that you can't apply a Heck exception here because NC was the kind of individual who slept on his rights. I understand that, but I'm not sure he had three years from when he was denied or when he lost the sentence reduction credits for failing to participate in the treatment course. Do you think that was the full three years or some fraction of it? The State's representation was that he knew as early as March 2002 that the prison was denying him the time credits that he sought. This is on page 10 of our brief where we're exerpting from the State's brief in NC. And he remained in custody, the State said, until January 22, 2004. So I misspoke, it was slightly under two years. But the State made the argument that then went unchallenged in NC's reply brief that he had been incarcerated for a period of nearly two years, at which point he knew that a claim, to the extent he wanted to pursue a claim, he had knowledge of it and never made any indication that he was pressing it. So I do think that is the basis to distinguish. And I will say this is a point that most of the courts of appeals of the seven who have adopted the rule that we advocate recognize that there is a distinction between litigants who do vigorously pursue and timely pursue their claims versus those who do not. And most courts, the Cohen case and the Powers case and the Wilson case and the 10th, 6th, and 4th circuits very clearly demonstrate that just because you're no longer incarcerated, that does not get you around heck. And that's entirely consistent, I believe, with what the court held in NC. Well, I'd like to go back to the kind of institution one is housed in, because prisons all have libraries of some sort. But sometimes these short-term incarcerations are in places where there isn't access to materials for filing something. Is that concern present in the facts of this case? Your Honor, I'm not clear if Mr. Newmy had access to a prison library while he was incarcerated. I know he was in a local county facility during his period of incarceration. It was minimal security. And I'm not entirely certain his full access to court while incarcerated. But I think your concern is absolutely a correct one, that individuals who are sometimes in a short period of confinement, in some of these cases deal with individuals who are confined for as short a period as a day or two. It is certainly the case that individuals in those circumstances lack any practical access to federal habeas for those periods of incarceration. And the factual realities of the kind of institution in which they are housed, I think, would certainly bear on that question as to whether or not they did have access to habeas during incarceration. And the rule we advance would simply be those individuals, when a court can look and make the determination that they never had access, not through any fault of their own, but they never had access to the court system, that those individuals are not precluded from bringing a subsequent Section 1983 claim. I'm still struggling a little bit with how you define access. Because a person who's incarcerated for three months may file a habeas action on day one, and potentially could get relief. Or the state might conclude upon investigation that it needs to concede something. So why is it that three months is too short? And if we're going to set up an administrable rule, you say, I don't hear you saying, and I think you said there is no bright line rule. So how would a court know whether heck applies if a person's been in for 12 months or eight months? One rule that I would suggest that I think that the lower courts could develop and that may satisfy these standards is whether or not the statute of limitations for the kind of claim has elapsed. And usually with the prison claims, of course, where the statute of limitations are often relatively short, the amount of time the prisoner has to advance their rights, particularly when they must exhaust a claim with the prison administrative system, if it's a claim, for example, going to the length of their confinement because good time credits have been denied. If an individual has sat on their rights such that the process that would have been available to them in prison was no longer timely, I think that would be a very good indication that the individual has forfeited their rights and would fall within the NC case. If, though, the individual is released while they still would have had a timely case, I do think the statute of limitations rule would capture what we think is a reasonable period of time by which a litigant should be anticipated to act. So to the extent that a timeframe needs to be developed, I suggest that that would be a workable framework that the courts could pursue to provide limitations that would distinguish claims that are outside the scope that look like Mr. NC's from those that would be inside the scope of someone who is incarcerated for, again, a very, very short period of time. So would you expand that and state the rule that you're advocating, that you just referred to? Yes, Your Honor. Restate it. Your Honor, the suggestion was in terms of delineating between who would be inside and outside the rule. My suggestion was that the statute of limitations that is available for the claim that the incarcerated litigant would have, be it either a necessary aspect of exhausting his or her prison remedies or a state-based statute of limitations of how long that person has to challenge their incarceration based on their confinement. That statute of limitations would, I think, establish what a reasonable period of time would be by which if an individual has been incarcerated beyond that period of time and has not pursued their claim, one could see it having been forfeited or relinquished. If, on the other hand, an individual was released before that period of time had elapsed, I think that is when you would see a claim. You could conclude that the individual did not have an adequate period of time to pursue their claim while incarcerated. What if the claim is filed on the last day of the statute of limitations and it's still pending in years of litigation when the person is released? Then you would say, heck, it does not apply. Yes, Your Honor, and that is actually the circumstances of the case that I brought to the Court's attention, the 28J letter, the Deamer case that's currently pending in the Third Circuit. So it isn't really the statute of limitations is only the line if the person does not file in this proposed rule. Yes, Your Honor, that is correct. I do think if somebody is vigorously pursuing their remedies while they're incarcerated but they are released from prison during the pendency of those challenges and those challenges are then dismissed as moot because of their release, I would submit that that would be within the rule that we suggest. Let me ask you this basic question. Would you say that the logic of heck, including footnote 10, would be that none of these claims is cognizable and that to get to your rule, one has to say that the full logic of heck is no longer applicable because of the change of views of justices or whatnot? No, Your Honor. I think there's some discussion or some dispute as to what the underlying logic of heck is. I think there are a couple of different threads in the decision. I think the majority of courts that have adopted our view suggest that the heck, in building from the Pizer case, is about statutory reconciliation. It's a recognition that Section 1983 and federal habeas, if both read to their fullest extent, could conflict because a Section 1983 plaintiff could then seek relief, avoiding the exhaustion rule that would not be available under federal habeas. So heck, as I think is best understood, is designed to reconcile those potentially. Wasn't that Justice Souter's view, though? And that's the minority view in heck, which was then arguably adopted by a majority of opinions in that Spencer case. Yes, Your Honor. Although I do think Justice Souter was very clear to say a sensible way to read the heck opinion would be and suggested that his view was consistent with what the court, in fact, did in heck. All right. Well, I guess that's one way to read it. Although Justice Ginsburg in Spencer cites Frankfurter saying that wisdom comes sometimes later, doesn't that imply that she thought the Souter view was not the way heck was written when she concurred in it, but that her view had evolved? I do think, Your Honor, I think that could be a fair reading, but I think Justice Souter took a different view that that was consistent. And I do think footnote 10, Your Honor, also is still not inconsistent with our position because I think footnote 10 also can be read as suggesting that the broader rule, just because somebody is no longer incarcerated does not get them around heck. And, again, that's not the rule that we're advocating. And, of course, heck itself did not deal with that particular circumstance of somebody who was no longer incarcerated. Heck, of course, dealt with a presently incarcerated litigant who had previously filed multiple federal habeas claims and lost. And so I do think, as the courts have recognized, the question certainly remains open following heck. The Supreme Court in the Mohammed v. Close specifically recognized that this question remains open. And as heck itself said in a different part of the opinion, when the Supreme Court subsequently recognizes that a question remains open, that's very powerful evidence that prior decisions of the court are not to be read as foreclosing the position. And so, again, the seven circuits that have come out this way look to the fact, in part, that the Supreme Court subsequently said this question has not been decided authoritatively. And then how many circuits have come out against your position, the first and the fifth and the eighth? Is that right? And the fifth, yes, Your Honor. There are, including the eighth circuit, there would be four circuits against us. What's the fourth one other than the first and fifth? And the third. The first, third. First, fifth, and third, yeah. Yes, Your Honor. You're here today on your motion really to bring in somebody else to argue. Should we still do that? Your Honor, I do think it could be advisable to have adversarial proceeding in this matter to the extent that there could be continuing litigation in the matter. I think having adversarial parties would be a benefit to the court. So I do think the court should still respectfully consider the motion as the court sees fit. We would certainly welcome the participation of the defendants in this matter, either if the court felt it appropriate to serve them with the complaint or simply invited their participation. We would absolutely welcome participation by the state in either respect. There could be continuing litigation and it might be advisable. You mean there might be a rehearing? Is that what you have in mind, a rehearing or something? Your Honor, correct. If, for example, the court. What about even with the panel decision to evaluate the rule that you've now proposed? Yes, Your Honor. If the panel, I think that could be beneficial to have adversarial briefing. We would certainly support that as well. If the court thinks it useful to hear from the state, again, that was our motion that we thought that the proceeding would be more useful and more helpful by having that briefing. But, again, we certainly will defer to the court's preference for proceeding. You'd agree that this area is rather arcane, so the average lawyer that might be involved in some of these cases might not really be up on the details. Yes, Your Honor. Yes, and I do think that, if anything, cautions why Section 1983 shouldn't be easily set aside in these sorts of claims when it can be an arcane matter as to whether or not a heck applies to bar a claim, and particularly because many of these litigants are often proceed pro se. If anything, I would suggest that that would favor ever so slightly not barring a remedy in these circumstances. No more questions? Thank you. Thank you very much. Thank you, Your Honor.